Don Howarth (SBN 53783)
dhowarth@howarth-smith.com
Suzelle M. Smith (SBN 113992)
ssmith@howarth-smith.com
Jessica L. Rankin (SBN 279237)
jrankin@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, California, 90014
Telephone: (213) 955-9400
Facsimile: (213) 622-0791

Stephen M. Garcia (SBN 123338)
sgarcia@lawgarcia.com
David M. Medby (SBN 227401)
GARCIA, ARTIGLIERE & SCHADRACK
One World Trade Center, Suite 1950
Long Beach, California 90831
Telephone: (562) 216-5270
Facsimile: (562) 216-5271

David T. Kupfer (SBN 97666)
dave@dtklaw.net
LAW OFFICES OF DAVID T. KUPFER
24586 Hawthorne Boulevard, Suite 110
Torrance, California 90505
Telephone: (310) 373-7770
Facsimile: (310) 373-7778

Attorneys for Lead Plaintiff, Lawrence VICARI, individually
and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE VICARI, individually and on behalf of all others similarly situated, | CASE NO. CV13-00671 |
| Plaintiffs, | Assigned:      Hon. Audrey B. Collins<br>Courtroom:    680 |
| vs. | **CLASS ACTION** |
| VOYAGER FINANCIAL GROUP, LLC; VFG, LLC; BRANDON KOGUT; ANDREW GAMBER; BRITTNEY MCCLINTON;JONATHAN SHEETS; MACKENZIE YOUNG, | **LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT VFG, LLC's MOTION TO DISMISS SECOND AMENDED CLASS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| Defendants. | Hearing Date: September 9, 2013<br>Time: 10:00 am<br>Courtroom: 680 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**COMES NOW**, Lead Plaintiff Lawrence Vicari, on behalf of himself and all others similarly situated, by and through his attorneys of record, Howarth & Smith, Garcia, Artigliere & Shadrack, and the Law Offices of David T. Kupfer, and hereby opposes Defendants VFG, LLC's Motion to Dismiss Second Amended Complaint, Pursuant to Fed. R. Civ. P. 12(b)(6).  This Opposition is based on the Memorandum of Points and Authorities, all prior pleadings and papers previously on file with this court, and such further oral and documentary evidence, which may be presented at the hearing on this Motion and Opposition.


DATED:     August 19, 2013            HOWARTH & SMITH


                                      By:    /s/ Suzelle M. Smith
                                             SUZELLE M. SMITH
                                             DON HOWARTH
                                             JESSICA RANKIN
                                             Attorneys for Lead Plaintiff
                                             Lawrence VICARI and CLASS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**PAGE(S)**

I.     INTRODUCTION ........................................................... 1

II.    ARGUMENT ................................................................. 2

    A.    Standard of Review ............................................ 2

    B.    The SAC Sufficiently Alleges Misrepresentation by VFG .................... 4

        1.    Disclaimers in the contract documents do not inoculate VFG from liability ........................................... 6

        2.    VFG made misrepresentations of fact to Class Members regarding the legality of the transactions ....................................... 9

        3.    VFG made actionable misrepresentations regarding the benefits to the Veterans ................................. 10

    C.    Class Members Justifiably Relied on VFG's Misrepresentations ........ 11

        1.    The SAC states a presumption of reliance based on the *Affiliated Ute* doctrine, which VFG does not dispute ................... 11

        2.    The SAC states a presumption of reliance under the fraud on the market doctrine ................................. 12

        3.    The SAC alleges actual reliance ................................. 14

        4.    Lead Plaintiff's claim of justifiable reliance is not barred as a matter of law because of language in the contract ....................... 14

    D.    The Second Amended Complaint Sufficiently Pleads Causation and Economic Loss ............................................. 16

    E.    In the Alternative, Lead Plaintiff Should be Granted Leave to Amend ..................................................... 18

III.   CONCLUSION ............................................................ 19

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Affiliated Ute v. United States,*
    406 U.S. 128 (1972) ................................................................ 11, 12, 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................... 3

*Bank of the W. v. Valley Nat. Bank of Arizona,*
    41 F.3d 471 (9th Cir. 1994) ............................................................... 15

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ......................................................................... 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................... 3, 4, 16

*Bennett v. Schmidt,*
    153 F.3d 516 (7th Cir. 1998) ............................................................... 3

*Binder v. Gillespie,*
    184 F.3d 1059 (9th Cir. 1999) ........................................................... 12

*Brooklyn Sav. Bank v. O'Neill,*
    324 U.S. 697 (1945) ........................................................................... 8

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
    595 F. Supp. 2d 1253 (M.D. Fla. 2009) ............................................. 16

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ........................................................... 18

*Gilligan v. Jamco Development Corp.,*
    108 F.3d 246 (9th Cir. 1997) ............................................................... 3

*Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.,*
    736 N.W.2d 313 (Minn. 2007) ............................................................. 9

*Hurley v. FDIC,*
    719 F.Supp. 27 (D.Mass. 1989) ......................................................... 12

*In re Daou Sys., Inc.,*
    411 F.3d 1006 (9th Cir. 2005) ........................................................... 16

*In re Flanagan,*
    31 F. Supp. 402 (D.D.C. 1940) ........................................................... 8

*In re LDK Solar Sec. Litig.,*
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ............................................... 4

*In re Mut. Funds Inv. Litig.,*
    566 F.3d 111 (4th Cir. 2009) ............................................................. 13

ii

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ...................................................................... 10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ...................................................................... 18

*McQuirk v. Donnelley*,
    189 F.3d 793 (9th Cir. 1999) .......................................................................... 8

*Miller v. Osterlund*,
    154 Minn. 495 (1923) ...................................................................................... 9

*Nathenson v. Zonagen, Inc.*,
    267 F.3d 400 (5th Cir. 2001) ........................................................................ 16

*Nelson v. Taff*,
    175 Wis. 2d 178 (Wis. Ct. App. 1993) ......................................................... 10

*Nimtz v. Cepin*,
    2011 U.S. Dist. LEXIS 21104 (S.D. Cal. Mar. 3, 2011) ............................... 18

*Novak v. Kasaks*,
    216 F. 3d 300 (2nd Cir. 2000) ....................................................................... 10

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ......................................................................... 15

*Reudy v. Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010 ............................................................ 8

*Smith v. Pac. Props. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004) .................................................................. 3, 14

*State v. Tyler*,
    512 N.W.2d 552 (Iowa 1994) ........................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 4

*Travis v. Knappenberger*,
    204 F.R.D. 652 (D. Or. 2001) .......................................................................... 9

*United States ex rel. Lee v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. Cal. 2011) ................................................................. 18

*United States v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ........................................................................... 3

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    901 A.2d 106 (Del. 2006) ............................................................................... 10

*Washington v. Baenziger*,
    673 F. Supp. 1478 (N.D. Cal. 1987) ............................................................... 4

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ........................................................................ 3

**STATUTES**

15 U.S.C. §§78j(b) .............................................................................................. 1

17 C.F.R. § 240.10b-5 .................................................................................. 1, 2, 6

37 U.S.C. § 701 .................................................................................................. 5

38 U.S.C. § 5301 ................................................................................................ 5

Cal. Civ. Code §1668 .......................................................................................... 8

Fed. R. Civ. P. 8 ........................................................................................... 2, 16

Fed. R. Civ. P. 12 ........................................................................................... 1, 3

Fed. R. Civ. P. 15 ............................................................................................. 18

**OTHER**

2 Publicly Traded Corporations: Governance & Reg. § 14:3 (2013) ........................ 12

4 Law Sec. Reg. § 12.9 ....................................................................................... 10

Restatement (Second) of Contracts § 195 (1981) ................................................... 8

Restatement (Second) of Torts § 545 (1977) .......................................................... 9

Securities Exchange Act of 1934 ................................................................. 1, 2, 5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In this action, Lead Plaintiff Lawrence Vicari, (hereinafter "Lead Plaintiff") brings suit on behalf of himself and all others similarly situated against Defendants VFG, LLC and Voyager Financial Group, LLC (collectively, "VFG"), as well as Andrew Gamber, Brandon Kogut, Brittney McClinton, Jonathan Sheets, and Maczenzie Young (collectively, the "Individual Defendants," and with VFG, "VFG Defendants"), pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (hereinafter the "Exchange Act"), 15 U.S.C. §§78j(b), and Rule 10b-5 promulgated thereunder. *See* Plaintiff's Second Amended Complaint (hereinafter "SAC") at ¶1-3, Dkt. No. 44.

Lead Plaintiff filed a Complaint on January 31, 2013, and a First Amended Complaint on March 27, 2013, which named an additional defendant.  Defendants filed Motions to Dismiss on April 18, 2013, and Lead Plaintiff filed a Second Amended Complaint ("SAC") on May 8, 2013.  Defendants' Motions to Dismiss the First Amended Complaint were taken off calendar.  On June 10, 2013, Defendant VFG filed a Motion to Dismiss the Second Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("VFG Motion to Dismiss") and the Individual Defendants filed a Motion to Dismiss the Second Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(2 and Alternatively Rule 12(b)(6) ("Individual Defendants' Motion to Dismiss").  Some of the arguments made by Defendants in the two Motions to Dismiss are duplicative of one another.  Lead Plaintiff will not repeat arguments twice, and hereby incorporates the arguments made in the Opposition to Individual Defendants' Motion to Dismiss into the Opposition to VFG's Motion to Dismiss, and vice versa.  Specifically, Defendants' arguments as to the misrepresentations made, Lead Plaintiffs' reasonable reliance on the misrepresentations, and economic loss or causation are addressed in the Opposition to VFG's Motion to Dismiss, herein.  Defendants' arguments as to personal jurisdiction

1

1  over the Individual Defendants and control liability of the Individual Defendants are

2  addressed in the Opposition to Individual Defendants' Motion to Dismiss, filed

3  concurrently herewith.

4      In the SAC, Lead Plaintiff asserts claims on behalf of himself and all similarly

5  situated persons and entities ("Class Members") who were induced by Defendants to

6  purchase non-assignable government-funded pension and benefit payments during the

7  Class Period ("Securities").  *See* SAC at ¶16, Dkt. No. 44.  Lead Plaintiff's SAC

8  asserts claims for (1) violation of §10(b) of the Exchange Act and Rule 10b-5 against

9  VFG Defendants for the employment of devices, schemes, and artifices to defraud

10  Class Members into purchasing Securities in the form of structured payments,

11  awards, pensions and disability benefits and incomes; and (2) Violation of §20(a) of

12  the Exchange Act against Individual Defendants for acting as "control persons."  The

13  sale of such Securities was unlawful pursuant to the Exchange Act and resulted in

14  damage and losses accruing to Class Members.  *See* SAC at ¶3, Dkt. No. 44.

15      In its Motion to Dismiss, VFG contends that (1) the SAC fails to establish any

16  misrepresentation was made; (2) the SAC fails to show reasonable reliance on an

17  affirmative misrepresentation or to establish a fraud on the market theory; and (3) the

18  SAC does not sufficiently plead economic loss or causation.  For the reasons more

19  fully explained below, the SAC sufficiently pleads that VFG made misrepresentations

20  in connection with the sale of a security, that Class Members reasonably relied on the

21  misrepresentations, that VFG is liable on a fraud on the market theory, and that Class

22  Members were damaged by VFG's conduct. VFG's Motion to Dismiss should

23  accordingly be denied.

24  **II.    ARGUMENT**

25      **A.    Standard of Review**

26      To satisfy the burden of pleading, Federal Rules of Civil Procedure (hereinafter

27  "Fed. R. Civ. P."), Rule 8 "requires only a 'short and plain statement of the claim

28  showing that the pleader is entitled to relief' in order to 'give the defendant fair notice

1  of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

2  *Twombly*, 550 U.S. 544, 555 (2007).

3      A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is viewed

4  with disfavor and is granted only in extraordinary circumstances. *United States v.*

5  *Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also Gilligan v. Jamco*

6  *Development Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).  Claims of a lack of factual

7  basis, if adequate notice is given, should be addressed by a motion for summary

8  judgment.  *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

9      For the purposes of a Fed. R. Civ. P. Rule 12(b)(6) motion, any claimed defect

10  must appear on the face of the complaint.  In ruling on such a motion, the Court must

11  assume all factual allegations of the complaint and all reasonable inferences from

12  those facts as true.  *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1099 (9th Cir.

13  2004).  A motion to dismiss must be denied if a plaintiff's claim has facial

14  plausibility.  *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012)  "A

15  claim has facial plausibility when the plaintiff pleads factual content that allows the

16  court to draw the reasonable inference that the defendant is liable for the misconduct

17  alleged."  *Id.*  "The issue is not whether a plaintiff will ultimately prevail but whether

18  the claimant is entitled to offer evidence to support the claims."  *Gilligan,* 108 F.3d at

19  249; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  And the Supreme Court in

20  *Twombly*, which is an anti-trust case, emphasized that a Court's disbelief of the facts

21  is not a proper grounds for granting a motion to dismiss and the standard does not

22  impose a probability requirement:

23          Factual allegations must be enough to raise a right to relief above
24      the speculative level, see 5 C. Wright & A. Miller, Federal
            Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)
25      (hereinafter Wright & Miller) ("[T]he pleading must contain
            something more ... than ... a statement of facts that merely creates
            a suspicion [of] a legally cognizable right of action"), on the
26      assumption that all the allegations in the complaint are true (even
            if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N. A.,* 534
27      U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke
            v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338
28      (1989) ("Rule 12(b)(6) does not countenance ... dismissals based

                                                3

on a judge's disbelief of a complaint's factual allegations");
*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d
90 (1974) (a well-pleaded complaint may proceed even if it
appears "that a recovery is very remote and unlikely"). In
applying these general standards to a § 1 claim, we hold that
stating such a claim requires a complaint with enough factual
matter (taken as true) to suggest that an agreement was made.
Asking for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage; it simply
calls for enough fact to raise a reasonable expectation that
discovery will reveal evidence of illegal agreement.

*Twombly,* 550 U.S. at 934.

Further, the Rule 9(b) requirement of particularity in the pleading of fraud claims "is intended to give a defendant notice of the specific alleged misconduct to enable him to prepare a defense, and to bar fraud suits as a pretext for discovery. A plaintiff is not required to plead detailed evidentiary matters." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (citations omitted). The Private Securities Litigation Reform Act ("PSLRA") requires that plaintiffs plead the alleged misstatements made, the reasons the statements were misleading, and facts giving rise to an inference that the defendant acted with the required state of mind. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). The PSLRA, however, "in no way turns FRCP 12 into a trial-type, papers-only proceeding, much less one in which defendants get the benefit of every conceivable doubt, including credibility calls. That is reserved for the jury." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008).

## B. The SAC Sufficiently Alleges Misrepresentation by VFG

VFG argues that the SAC fails to state a claim because it does not adequately allege a misrepresentation by VFG. VFG criticizes purported misstatements alleged in the SAC - that a veteran can lawfully assign his pension or disability benefits, that the transaction was risk free absent the insolvency of the U.S. government, and that the transactions would help the Veterans. *See* VFG Motion to Dismiss at 8, 12, Dtk. No. 48. While these are among the misstatements alleged in the SAC, VFG does not

/ / /

even challenge the sufficiency of the other misstatements alleged.  The SAC specifies 7 misstatements, each of which was alleged to be wholly false:

1.     VFG failed to disclose to the Class and concealed the fact that U.S. government pensions and disability benefits may not be lawfully assigned, anticipated, or attached under 37 U.S.C. § 701 and/or 38 U.S.C. § 5301, which prohibit the assignment of U.S. Government pensions and disability benefits.  This is false and misleading because U.S. government pensions and disability benefits may not be lawfully assigned, anticipated, or attached under 37 U.S.C. § 701 and/or 38 U.S.C. § 5301.

2.     VFG failed to disclose to the Class and concealed the fact that the payments owed by the Veterans cannot be lawfully or effectively secured to Lead Plaintiff or the Class Members.  This is false and misleading because payments owed by the Veterans cannot be lawfully or effectively secured by the Lead Plaintiff or Class Members.

3.     VFG misrepresented that the sole risk of the investment was the solvency of the U.S. government.  This is false and misleading because the risks of the investment were not limited to the solvency of the U.S. government.

4.     VFG misrepresented that the Securities were risk free because VFG had legally enforceable power of attorney for all the Veterans and the ability to set up irrevocable escrow accounts to secure the investment for the Class Members.  This is false and misleading because VFG did not have enforceable power of attorney for each of the Veterans and did not have the legal right to enforce payments into the escrow accounts, rendering the Securities worthless.

5.     VFG failed to disclose and concealed the fact that the Veterans may not assign their benefits and therefore may revoke their assignments at any

5

1   time.  This is false and misleading because Veterans could in fact revoke

2   their assignments at any time.

3       6.    VFG misrepresented that the Securities were risk free.  This was false

4   and misleading because the Securities were in fact unlawful and

5   therefore almost certain to fail.

6       7.    VFG misrepresented that the Securities transactions would benefit

7   Veterans.  This is false and misleading because VFG Defendants were

8   inducing Veterans to enter into illegal sales of Securities to obtain

9   money under false pretenses from innocent purchasers.

10   *See* SAC at ¶¶ 30-31, Dkt. No. 44.

11       By its silence, VFG concedes that the misrepresentations contained in points 2,

12   4, 5, and 6 above state a claim under Rule 10b-5.  *See* VFG Motion to Dismiss at 8-

13   12, Dtk. No. 48.  On points 1, 3, and 7, VFG concedes that it made such

14   misrepresentations, but argues that it is not liable for the misrepresentations due to

15   some defenses as a matter of law.  *See* VFG Motion to Dismiss at 8-12, Dtk. No. 48.

16   However, Lead Plaintiff has stated sufficient facts to establish a cause of action under

17   Rule 10b-5 for such misrepresentations and there is no defense set forth in the SAC

18   which precludes liability under the Exchange Act as a matter of law.

19       **1.**    **Disclaimers in the contract documents do not inoculate VFG**

20   **from liability**

21       VFG first argues that it is not liable for the misrepresentations of the

22   lawfulness of the transaction and the risk-free nature of the transaction because VFG

23   included exculpatory language in the contract documents including a disclaimer

24   whereby VFG states "both parties intend that the transaction(s) contemplated… shall

25   not constitute impermissible assignment(s), transfer(s), or alienation of benefits by

26   sellers" and also "buyer and seller acknowledge and agree that buyer and seller are

27   aware of and expressly accept all risks associated with the transaction."  VFG Motion

28   to Dismiss at 9-10, Dtk. No. 48.  This language does not serve as a defense as a

6

1    matter of law on the pleadings.  The SAC alleges that this language was included

2    because VFG Defendants knew of their fraud and in advance were attempting to

3    insulate their wrongful conduct.  *See* SAC at ¶¶ 45-46, Dkt. No. 44.

4         The SAC alleges that VFG knew or should have known that the transactions

5    were unlawful under federal law.  *See* SAC at ¶ 30, Dkt. No. 44.  Despite this fact,

6    VFG represented to Class Members that the transactions were lawful, through the

7    Selling Agents who communicated directly with Class Members.  *See* SAC at ¶¶ 29-

8    30, Dkt. No. 44; *see also* Exhibit C to SAC at ¶¶ 4-5, Dkt. No. 44 ("I was given the

9    following information, the source of which was VFG, which I was to use in

10   marketing the investments:  (a) it was legal to market and sell Veteran's disability

11   payments…  I trusted in the integrity and truthfulness of VFG in relying on these

12   representations and I conveyed them to my clients in marketing the purchases.").  In

13   addition, the language VFG cites from the contract documents shows that VFG went

14   to great lengths to conceal the unlawfulness of the transaction.  Rather than disclose

15   to Class Members that the transactions were unlawful, VFG stated that it did not

16   "intend" the transactions to be impermissible assignments.  The inference weighed

17   against the moving parties is that VFG knew that the transactions might be or were

18   unlawful, and inserted that language to protect itself.  Lead Plaintiff alleges that VFG

19   knew or should have known that the transactions were unlawful, and the inclusion of

20   exculpatory language does not negate its knowledge that the statements were false.

21        The SAC also alleges that VFG expressly represented to Class Members,

22   through the Selling Agents, that the transactions were "risk free."  *See* SAC at ¶¶ 29-

23   30, Dkt. No. 44; *see also* Exhibit C to SAC at ¶¶ 4-5 ("I was given the following

24   information, the source of which was VFG, which I was to use in marketing the

25   investments:  (b) these types of disability payment purchases were deemed very

26   secure as they were backed by the strength of the U.S. Government, so that the

27   Buyer's capital and reasonable rate of return were assured…  I trusted in the integrity

28   and truthfulness of VFG in relying on these representations and I conveyed them to

1   my clients in marketing the purchases."). As alleged in the SAC, VFG told Class

2   Members that the only risk to the transaction was the solvency of the U.S.

3   government. Thus, Class Members believed that to be the only risk they were

4   accepting. VFG's misrepresentations induced Class Member's reliance and blinded

5   them to the real risks of the transaction.

6        Furthermore, VFG's attempt to insulate itself from liability by contracting

7   away its liability for fraud is ineffective as a matter of law. VFG cites no case law or

8   authority for the proposition that an exculpatory clause in a contract can excuse its

9   liability for a violation of securities laws. In fact, a party cannot limit its liability by

10  an exculpatory contract clause. *See* Cal. Civ. Code §1668 ("All contracts which have

11  for their object, directly or indirectly, to exempt anyone from responsibility for his

12  own fraud, or willful injury to the person or property of another, or violation of law,

13  whether willful or negligent, are against the policy of the law."); *see also* Restatement

14  (Second) of Contracts § 195 (1981) ("A term exempting a party from tort liability for

15  harm caused intentionally or recklessly is unenforceable on grounds of public

16  policy."); *see also McQuirk v. Donnelley*, 189 F.3d 793 (9th Cir. 1999); *see also*

17  *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091 (N.D. Cal. 2010), *aff'd*

18  *sub nom. Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011). A statutory right

19  conferred on a private party, but also affecting public interest may not be waived or

20  released by private agreement if such waiver or release contravenes the statutory

21  policy. *See Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 704 (1945); *see also* SAC

22  at ¶41, Dkt. No. 44. The purpose of these statutes is to protect not only the recipient

23  of the benefits, but also "to insure the public against the pauperism of the recipient of

24  the benefits or that of his dependents." *In re Flanagan,* 31 F. Supp. 402, 403 (D.D.C.

25  1940). VFG may not escape liability for its misrepresentations by a motion to

26  dismiss on the pleadings because they included exculpatory language in their

27  contracts.

28  / / /

### 2. VFG made misrepresentations of fact to Class Members regarding the legality of the transactions

VFG next argues that it is not liable for misrepresentation because liability for fraud cannot be predicated upon a misrepresentation of the law. *See* VFG Motion to Dismiss at 11, Dtk. No. 48. They argue that opinions of law are not actionable misrepresentations. *See id.* However, a statement that a particular thing is lawful may be a statement of fact. For example, the Second Restatement of Torts provides:

> A statement that a statute has been enacted or repealed or that a particular court has decided thus and so on a particular state of facts is as much a representation of fact as a statement that an automobile has a steering gear of a specified pattern. These are actual happenings and form a part of the data necessary to determine the consequences that the law attaches to another state of facts. The rules that determine the liability for a fraudulent misrepresentation of these matters of law are the same as those determining liability, for the fraudulent misrepresentation of any other fact.

Restatement (Second) of Torts § 545, cmt. b (1977).

In illustration, the Restatement provides the following examples:

> 1. A, seeking to induce B to invest in a mining enterprise, fraudulently tells B that certain lands can be obtained from the government by patent free from mineral reservations. Government land is classified as mineral and non-mineral land, and only non-mineral land can be obtained by patent without a mineral reservation. B reasonably understands A to assert that the particular land is classified by the government as non-mineral land. In reliance on the implied assertion he makes the investment and suffers pecuniary loss. A is subject to liability to B.
>
> 2. A, seeking to sell frozen fish to B, fraudulently informs B that there is no legal maximum price on frozen fish. B reasonably understands A to assert that government authorities regulating prices have not established any maximum price for the commodity, although they have in fact done so. In reliance on the implied assertion, B buys the fish from A and suffers pecuniary loss. A is subject to liability to B.

Restatement (Second) of Torts § 545, cmt. c (1977); *see also Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007), citing *Miller v. Osterlund*, 154 Minn. 495, 496 (1923); *see also Travis v. Knappenberger*, 204 F.R.D. 652, 659-60 (D. Or. 2001); *see also Wal-Mart*

9

1  *Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 115 (Del. 2006); *see also*

2  *Nelson v. Taff*, 175 Wis. 2d 178, 182-85, (Wis. Ct. App. 1993); *see also State*

3  *v. Tyler*, 512 N.W.2d 552, 555 (Iowa 1994)

4      The misrepresentations in this case are virtually identical to the examples

5  described in the Restatement's illustrations.  In order to induce Class Members to

6  purchase the Securities, VFG falsely stated that the transactions were lawful and "risk

7  free."  In reliance on those representations, Class Members purchased the securities.

8  VFG's representations were not statements of opinion – VFG communicated

9  information of the status of the law in order to fraudulently induce investors to

10  purchase the Securities.  *See* SAC at ¶ 4, Dkt. No. 44.  Thus, VFG's Motion to

11  Dismiss fails on this point.

12      **3.    VFG made actionable misrepresentations regarding the
         benefits to the Veterans**

13

14      VFG next argues that the allegations in the SAC fail as a matter of law because

15  VFG's optimism that the transactions would help the Veterans is not an actionable

16  misrepresentation.  However, statements of fact are actionable.  Such statements must

17  be analyzed with a view of the entirety of the misrepresentation.  "Statements of

18  opinion that are susceptible to being characterized as puffery cannot be viewed in a

19  vacuum.  Instead, as with questions of materiality generally, the statements must be

20  examined within the context of which they were made and the totality of information

21  available."  4 Law Sec. Reg. § 12.9.  While vague optimism is not actionable,

22  specific statements that are positive or confident are actionable.  *See Novak v.*

23  *Kasaks*, 216 F. 3d 300, 315 (2nd Cir. 2000) (statements that inventory situation was

24  "in good shape" and "under control," when defendants knew the opposite to be true,

25  were actionable).  When such statements are made, the Court looks to the degree in

26  which the disclosure of the optimistic information was full and fair, and whether the

27  representation was made in good faith.  *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d

28  1271, 1277 (D.C. Cir. 1994) ("projections and statements of optimism are false and

10

1    misleading for the purposes of securities laws if they were issued without good faith

2    or lacked a reasonable basis when made.")  Here, the SAC alleges that VFG

3    represented that the "transactions would benefit Veterans."  SAC at ¶ 30, Dkt. No.

4    44.  However, the Veterans were extremely prejudiced by entering into the

5    transactions, as alleged in the SAC.  The transactions are unlawful under federal law

6    and subjected the Veterans to potential liability from investors.  *See* SAC at ¶ 30,

7    Dkt. No. 44.  Veterans were induced to conduct illegal sales of Securities and

8    obtained money under false pretenses.  *Id.*  VFG knew or should have known that

9    such Securities were unlawful and would subject Veterans to potential legal liability.

10   SAC ¶ 30-32, Dkt. No. 44.  The representations were made in bad faith and without

11   disclosing the extent of harm to the Veterans.  VFG's misrepresentations are

12   therefore actionable.

13        **C.    Class Members Justifiably Relied on VFG's Misrepresentations**

14        VFG contends in its Motion to Dismiss that there was no justifiable reliance by

15   Class Members on VFG's misrepresentations because the fraud on the market theory

16   does not apply, and because the terms of the contract contradict the representations.

17   *See* VFG Motion to Dismiss at 12-17, Dtk. No. 48.

18            **1.    The SAC states a presumption of reliance based on the**
                   ***Affiliated Ute* doctrine, which VFG does not dispute**
19

20        The SAC asserts a presumption of reliance based on the *Affiliated Ute* doctrine

21   (as set forth in *Affiliated Ute v. United* States, 406 U.S. 128 (1972)) or, <u>in the</u>

22   <u>alternative</u>, on a fraud on the market doctrine.  *See* SAC at ¶ 65-68, Dkt. No. 44.

23   VFG does not dispute that Lead Plaintiff is entitled to a presumption of reliance under

24   the *Affiliated Ute* doctrine; VFG challenges only the presumption under the fraud on

25   the market doctrine.  The SAC properly states a presumption of reliance and VFG's

26   Motion to Dismiss as to reliance fails.

27   / / /

28   / / /

**2.      The SAC states a presumption of reliance under the fraud on the market doctrine**

As an alternative to the *Affiliated Ute* doctrine, the SAC alleges a presumption of reliance under a fraud on the market theory. *See* SAC at ¶¶ 65-68, Dkt. No. 44. VFG argues that the fraud on the market theory does not apply. *See* VFG Motion to Dismiss at 14-16, Dtk. No. 48. The fraud on the market doctrine operates to create a presumption of justifiable reliance where the value of a security is determined by the material information regarding the security, and an individual plaintiff may not be able to show actual reliance on the misstatements. *See* 2 Publicly Traded Corporations: Governance & Reg. § 14:3 (2013); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988). It functions to relieve plaintiffs of the burden of proving reliance, shifting the burden to defendants to prove there was no reliance. *Id.*

VFG first argues that the theory does not apply because there is no public market for the Securities, as if the market had to be a stock exchange. However, there is no authority that the fraud on the market doctrine only applies to a listed stock exchange. Any market may be effected by fraud, if the price of the security is influenced by public information. The case law discusses this in terms of an "efficient" market, not a publically traded market (which is efficient but not exclusively so). "The question is whether such a market is efficient-meaning simply whether the stock prices reflect public information. *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999). *See also Hurley v. FDIC,* 719 F.Supp. 27, 33 (D.Mass.1989) ("Where the stock is traded is not the crucial issue. The important question is whether the stock is traded in a market that is efficient-one that obtains material information about a company and accurately reflects that information in the price of the stock."). As alleged in the SAC, the misrepresentations did in fact result in the Class Members misjudging the value and integrity of the Securities. *See* SAC at ¶ 66, Dkt. No. 44. The value of the Securities would have dropped dramatically had investors known that the Securities were unlawful and essentially worthless.

1    Thus, the Securities were traded on an efficient market which would have responded

2    immediately to the disclosure of the relevant facts.

3        VFG also asserts that the fraud on the market doctrine does not apply because

4    there was no public misrepresentation.  *See* VFG Motion to Dismiss at 15, Dtk. No.

5    48.  However, public misrepresentations can be made through individuals and

6    websites.  *See In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 122 (4th Cir. 2009)

7    *overruled on other grounds by Janus Capital Grp., Inc. v. First Derivative Traders*,

8    131 S. Ct. 2296 (2011).  The SAC alleged that VFG disseminated materials to the

9    investing public in two ways: (1) through Selling Agents who were rigidly controlled

10   and given scripts to use with potential investors; and (2) through public sources such

11   as websites.  The Selling Agents were given uniform sales pitches to relay to Class

12   Members to market the Securities.  *See* SAC at ¶¶ 23, 26, 29, 32, Dkt. No. 44.  All

13   information received by the Class Members is directed through the Selling Agents.

14   *Id.*  The Selling Agents were specifically directed to communicate information to the

15   Class Members, including that the transactions were lawful.  *Id*. at ¶ 27.  VFG even

16   took the additional step of drafting a memorandum for circulation to Selling Agents

17   on the lawfulness of the transaction, designed to be communicated to potential

18   investors.  *Id.* at  ¶¶44-45.

19        In support of Lead Plaintiff's claims, Lead Plaintiff's Selling Agent, Leonardo

20   Bertucci submitted a declaration outlining his role in the process.  *See* Exhibit C to

21   SAC, Dkt. No. 44.  Bertucci candidly describes his role at VFG – one of simply

22   passing on the information he was given.  *See* Exhibit C to SAC at ¶ 2, 5, 7, 9, 10,

23   Dkt. No. 44.  VFG instituted a simple process whereby all material distributed to

24   potential investors came directly from their company.  VFG's activities spanned at

25   least 31 states, resulting in approximately 317 investments and $35,000,000 in

26   purchases.  *See* SAC at ¶48, Dkt. No. 44.  In addition, VFG used publicly available

27   websites to disseminate information to the general public.  *See* SAC ¶ 68, Dkt. No.

28   44.  This is further detailed in the Cease and Desist Order issued by the Arkansas

13

1   Securities Commissioned, attached as Exhibit A to the SAC.  The Order details

2   VFG's use of websites to promote the sale of the Securities, through the Selling

3   Agents.  *See* Exhibit A to SAC at ¶ 18-19, Dkt. No. 44.  The SAC therefore alleges

4   multiple methods through which VFG disseminated information to the investing

5   public, both through their agents and through publicly available websites, and VFG's

6   Motion to Dismiss fails on this basis.

7                    **3.      The SAC alleges actual reliance**

8           In addition to the application of the fraud on the market doctrine, the SAC

9   alleges actual reliance, negating the need for the presumptions discussed above.  *See*

10  SAC at ¶¶ 42, 45, 80, and 87, Dkt. No. 44.  Thus, the SAC properly states a claim for

11  actual justifiable reliance, regardless of the presumptions under *Affiliated Ute* and the

12  fraud on the market theory.

13                   **4.      Lead Plaintiff's claim of justifiable reliance is not barred as a
14                            matter of law because of language in the contract**

15          VFG claims that Lead Plaintiffs' claims are barred as a matter of law because

16  the misrepresentations in the SAC contradict terms in the contract.  As discussed in

17  Section II(B), *supra*, the SAC alleges seven misrepresentations made by VFG to

18  Class Members.  VFG argues that the misrepresentations are contradicted by the

19  express terms of the contract, but does not address all of the misrepresentations in the

20  SAC.  VFG claims that the representations that the transactions are lawful, and that

21  the only risk is the solvency of the U.S. government are contradicted by the contract.

22  *See* VFG Motion to Dismiss at 13:25-14:8, Dtk. No. 48.  When a court considers a

23  motion to dismiss on the pleadings, all reasonable inferences from the factual

24  allegations must be construed against the moving party.  *Smith v. Pac. Props. & Dev.*

25  *Corp.*, 358 F.3d 1097, 1099 (9th Cir. 2004).  Therefore, any term of the contract

26  which is subject to any interpretation must be construed to support the claims, not

27  undermine them.  The SAC alleges that there are false statements of fact other than

28  the ones VFG claims are contradicted by the contract language, and that these are

1  false.  *See* SAC at ¶ 30, Dtk. No. 44.  Thus, the SAC is sufficient to allege the cause

2  of action.

3       As to others, VFG does not specify what contract terms supposedly

4  "contradict" the misrepresentations as a matter of law.  VFG includes one contract

5  term: "Buyer acknowledges and agrees that VFG is not providing, and does not

6  provide, any legal, tax, financial, or other advise of any nature and recommends that

7  Buyer consults his/her own professional advisor(s)."  VFG Motion to Dismiss at 16,

8  Dtk. No. 48.  The contract term quoted does not state that VFG makes no

9  representations or warranties as to the information communicated to the Class

10  Members.  The contract term does not say that the securities include risks of being

11  unlawful and unenforceable and that the U.S. government has nothing to do with

12  guaranteeing the security.  The contract language does not specifically contradict the

13  misrepresentations.

14       In the cases cited by VFG, the plaintiffs signed specific contract terms which

15  stated that they did not rely on representations made.  *See Paracor Fin., Inc. v. Gen.*

16  *Elec. Capital Corp.*, 96 F.3d 1151, 1159 (9th Cir. 1996) (contract stated that plaintiffs

17  "made their own investment decision with respect to the purchase... without relying

18  on any other Person."); *see also Bank of the W. v. Valley Nat. Bank of Arizona*, 41

19  F.3d 471, 478 (9th Cir. 1994) ("Valley National agreed that it 'independently and

20  without reliance upon any representations of Lender ... made and relied upon its own

21  credit analysis and judgment.' Valley National promised to 'continue to make and

22  rely upon' its own decisions 'independently and without reliance upon' Bank of the

23  West.").  That is not the case here, and these cases do not provide VFG with any safe

24  harbor for its fraud.  Lead Plaintiff did not promise not to rely on any

25  misrepresentations made by VFG, and VFG does not argue otherwise.[1]  VFG's

26  Motion to Dismiss therefore fails as to justifiable reliance.

27  ———————————
[1] In addition, as explained above in Section II(B), *supra*, VFG cannot contract around

28  its liability for fraud.  Public policy provides that a defendant cannot insulate himself
from liability on his own fraudulent conduct by including exculpatory contract terms.

**D.    The Second Amended Complaint Sufficiently Pleads Causation and Economic Loss**

VFG contends in its Motion to Dismiss that the SAC pleads causation and economic loss for the securities fraud claim "in conclusory terms without sufficient supporting facts." *See* Motion to Dismiss at 26, Dtk. No. 48.  Defendants further state that "[t]he plaintiff's pleading does not state, much less does it explain, what loss, if any, the plaintiff himself actually suffered." *See* Motion to Dismiss at 28, Dtk. No. 48.  Defendants cite the case of *In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005), for the non-controversial proposition that Lead Plaintiff must demonstrate a causal connection "between the deceptive acts that form the basis of the claim of securities fraud and the injury suffered by the plaintiff." *See* Motion to Dismiss at 27, Dtk. No. 48.  The *Daou* Court held that the motion to dismiss should not be granted based on Defendants claims that the complaint there did not plead causation and loss specifically enough.   *Daou*, 411 F.3d at 1025-27.

In the context of private securities litigation, the Private Securities Litigation Reform Act does not require that loss causation be pled with any "heightened particularity" or with a strong inference.  *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,* 595 F. Supp. 2d 1253, 1279 (M.D. Fla. 2009); s*ee also Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 413 (5th Cir. 2001) ("The element of loss causation may be defined as a direct causal link between the misstatement and the claimant's economic loss.").  Rather, courts have applied Rule 8(a)(2)'s "short and plain statement" requirement to allegations of loss causation.

Lead Plaintiff's SAC satisfies the legal standard under Rule 8(a) by providing sufficient factual information to give Defendants notice of the complaint's claims and grounds on which they are based.  The plausibility standard as defined under the Supreme Court case of *Bell Atlantic Corp. v. Twombly*, calls for a pleading to contain sufficient facts to "nudge their claims across the line from conceivable to the plausible." *Twombly*, 550 U.S. at 547.  The SAC contained sufficient facts for an

16

1   assessment of the "reasonableness of the inference of liability" and a "plausible claim

2   for relief" to be undertaken.

3         The SAC alleges that VFG induced Class Members to invest in securities

4   which were unlawful and certain to fail.  *See* SAC at ¶¶ 2, 33, 51, 53, and 74, Dkt.

5   No. 44.  Class Members were fraudulently induced into purchasing the Securities,

6   due to the actions of VFG.  The SAC specifically states "VFG Defendants' scheme

7   did in fact lead to the loss of all or some of Class Members' money invested and to

8   unlawful gain by VFG Defendants."  SAC at ¶ 50, Dkt. No. 44; *see also* ¶¶ 72, 74,

9   and 87.  As a direct consequence of inducing Lead Plaintiff and Class Members to

10  purchase Securities, "Lead Plaintiff and Class Members invested in Securities which

11  were unlawful and worthless once the Veterans were unable to continue making

12  payments on the Securities." This resulted in the loss of "some or all of Lead Plaintiff

13  and Class Member's investment."  *See* SAC at ¶19, Dkt. No. 44.  Furthermore, the

14  SAC sufficiently pleads causation and economic loss by stating that "[a]s a direct and

15  proximate result of VFG Defendants' material omissions, Lead Plaintiff and Class

16  Members have suffered substantial damages in an amount to be determined at trial."

17  *See* SAC at ¶90, Dkt. No. 44.[2]

18        Lead Plaintiff has not merely listed statutory violations in conclusory terms,

19  but has provided direct and indirect factual information to put defendant on notice of

20  what conduct is being called for defense.  Here, Lead Plaintiff and others where

21  induced to pay for Securities which were meant to provide a return to investors

22  through means that are not lawful.  *See* SAC at ¶¶ 4, 5, Dkt. No. 44.  Since these

23  securities are not lawful, they have no lawful value and are essentially worthless.  *See*

24  SAC at ¶¶ 30, 31, 74, 85, 99, Dkt. No. 44.  The sale of these securities induced by

25  VFG's misrepresentations caused a loss to Lead Plaintiff and others in the amount of

26  [2] The full extent of damages suffered by all Class Members is unknown, as not all
    Class Members are known.  In addition, Lead Plaintiff is unaware of the extent to
27  which Class Members lost the entire amount of their investment, or just part.  Lead
    Plaintiff will undertake discovery to determine the exact amount of damages suffered
28  by each Class Member, once this Court denies VFG's Motion to Dismiss.

1  the purchase price.  *See* SAC at ¶¶ 81, 90, 104, Dkt. No. 44.  This is economic loss

2  caused by violation of the securities laws in its most basic form.

3      **E.      In the Alternative, Lead Plaintiff Should be Granted Leave to**

4          **Amend**

5      If the Court does grant VFG's Motion to Dismiss, it should also grant Lead

6  Plaintiff leave to amend the SAC.  "The standard for granting leave to amend is

7  generous."  *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th

8  Cir. 2011).  Rule 15 advises the court that leave to amend shall be freely given when

9  justice so requires.  Fed. R. Civ. P. 15(a).  "This policy is to be applied with extreme

10  liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

11  2003) (internal quotation marks and citation omitted).  Indeed, "in the absence of any

12  apparent or declared reason — such as undue delay, bad faith or dilatory motive on

13  the part of the movant, repeated failure to cure deficiencies by amendments

14  previously allowed, undue prejudice to the opposing party by virtue of allowance of

15  the amendment, futility of amendment, etc., leave sought should, as the rules require,

16  be 'freely given.'"  *Nimtz v. Cepin*, 2011 U.S. Dist. LEXIS 21104 (S.D. Cal. Mar. 3,

17  2011).  Under the futility analysis, dismissal without leave to amend is improper

18  unless it is clear, upon de novo review, that the complaint could not be saved by any

19  amendment.  *United States ex rel. Lee*, 655 F.3d at 995.  Thus, dismissal with

20  prejudice and without leave to amend is not appropriate unless it is clear that the

21  complaint could not be saved by amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1129

22  (9th Cir. 2000).  Here, in the event that the Court grants VFG's motion, Lead Plaintiff

23  should be granted leave to amend.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**III.   CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectively requests that this Court deny VFG's Motion to Dismiss the Second Amended Complaint.


Dated: August 19, 2013                    HOWARTH & SMITH


                                          By:    /s/ Suzelle M. Smith
                                                 SUZELLE M. SMITH
                                                 DON HOWARTH
                                                 JESSICA RANKIN
                                                 Attorneys for Lead Plaintiff
                                                 Lawrence VICARI and CLASS