UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

| Present: The Honorable | Audrey B. Collins | | |
|---|---|---|---|
| Angela Bridges | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

None  None

**Proceedings:**   ORDER GRANTING IN PART AND DENYING IN PART Defendant VFG, LLC's Motion to Dismiss and GRANTING IN PART AND DENYING IN PART the Individual Defendants' Motion to Dismiss (In Chambers)

Pending before the Court is Defendant VFG, LLC f/k/a Voyager Financial Group, LLC's motion to dismiss Plaintiff's Second Amended Class Action Complaint, filed on June 10, 2013. (Docket No. 47.) Plaintiff opposed on August 16 and VFG replied on September 4. (Docket Nos. 56, 61.) Also pending before the Court is Individual Defendants Andrew Gamber, Brandon Kogut, Brittney McClinton, Jonathan Sheets, and Mackenzie Young's motion to dismiss for lack of personal jurisdiction and failure to state a claim against them upon which relief may be granted, filed on June 10, 2013. (Docket No. 49.) Plaintiff opposed on August 19 and the Individual Defendants replied on September 4. (Docket Nos. 57, 68.) The Court previously took these matters under submission and vacated the hearing date. (Docket No. 60.) For the reasons below, both motions to dismiss are **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

Plaintiff filed a complaint on January 31, 2013 and a First Amended Complaint on March 27, 2013, naming an additional defendant. (Docket Nos. 1, 24.) In response to VFG and the Individual Defendants' first set of motions to dismiss, Plaintiff filed a Second Amended Complaint on May 8, 2013. (Docket No. 44.)

In the SAC, Plaintiff asserts claims on behalf of himself and a putative class of all similarly situated persons and entities who were allegedly induced by Defendants to purchase non-assignable government-funded pension and benefit payments between January 31, 2008 and January 31, 2013. SAC ¶¶ 3, 16, 58. He alleges that Defendants made numerous misstatements or omissions of material facts, including failing to disclose that U.S. government pensions and disability benefits may not be lawfully assigned, failing to disclose that payments owed to veterans cannot be lawfully or effectively secured, misrepresenting that the sole risk of the investment was the solvency of the U.S. government, misrepresenting that the securities were risk free because Defendants had legally enforceable power of attorney for all the veterans, and misrepresenting that the transactions would benefit veterans. Id. ¶ 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

In addition, Plaintiff alleges that, as part of their scheme, Defendants included provisions within the documents that execute the sale and purchase of the securities that "attempt to mislead Plaintiff and the Class Members into believing that the transactions involving the Securities were lawful and valid when in fact they are not." Id. ¶ 36. These provisions include, by way of example:

- "BOTH PARTIES INTEND THAT THE TRANSACTION(S) CONTEMPLATED BY THIS CONTRACT FOR SALE SHALL CONSTITUTE VALID SALE(S) OF PAYMENTS AND SHALL NOT CONSTITUTE IMPERMISSIBLE ASSIGNMENTS[.]" (SAC, Ex. F, Contract for Sale of Payments § 10.2.)

- "BUYER AND SELLER ACKNOWLEDGE AND AGREE THAT VFG MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER CONCERNING WHETHER A COURT OF LAW WOULD INTERPRET THE TRANSACTION(S) CONTEMPLATED HEREIN AS INVALID ASSIGNMENT(S)[.]" (Id. § 10.4.)

Similar "disclosures" appear "in bold print three different times in the plaintiff's contract documents[.]" (MTD at 3.) Plaintiff alleges Defendants were "fully aware" that the sale and purchase of the securities did in fact constitute impermissible assignments. SAC ¶ 39. Plaintiff alleges that he relied on the foregoing provisions "in believing that purchases of Securities were valid and lawful, and in deciding to purchase the Securities." Id. ¶ 42. As a result of Defendants' scheme, Plaintiff claims he and the putative class have suffered damages in the loss of some or all of the money they invested. Id. ¶¶ 43 50.

Based on the foregoing, Plaintiff alleges three causes of action for (1) securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(a) and (c) "Scheme Liability" against all Defendants; (2) violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) "Material Misstatements and Omissions" against all Defendants; and (3) violation of Section 20(a) of the Exchange Act against Individual Defendants.

## II. DISCUSSION

### A. VFG's Motion to Dismiss

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009). A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In actions brought pursuant to Section 10(b) and Rule 10b-5 of the Exchange Act, the Private Securities Litigation Reform Act ("PSLRA") requires that the plaintiff plead the alleged misstatements made, the reasons the statements were misleading, and facts giving rise to an inference that the defendant acted with the required state of mind. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

U.S. 308, 321 (2007).

To state a Rule 10b-5 claim, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) reliance, (3) scienter, (4) a connection with the purchase or sale of a security, (5) a transaction and loss causation, and (6) economic loss. Paracor Fin., Inc. v. GE Capital Corp., 96 F.3d 1151, 1157 (9th Cir. 1996). VFG contends that the SAC fails to establish any misrepresentation, fails to show reasonable reliance or establish fraud on the market, and does not sufficiently plead economic loss or causation. The Court addresses each in turn.

### 1. The SAC Sufficiently Alleges Misrepresentation

A statement is misleading if it gives reasonable investors "the impression of a state of affairs that differs in a material way from the one that actually exists." Berson v. Applied Signal Tech, Inc., 527 F.3d 982, 985 (9th Cir. 2008). VFG argues no misrepresentations were made on multiple grounds.

First, VFG contends that "the contract documents provided to the plaintiff . . . and attached as exhibits to the [SAC] clearly disclose the information the plaintiff alleges was fraudulently omitted." (MTD at 8.) Plaintiff responds that "[d]isclaimers in the contract documents do not inoculate VFG from liability." (Opp. at 6.) The SAC alleges that this "exculpatory language" was used precisely because Defendants "knew that the statements they made and had the Selling Agents make to the Class Members were in fact false." SAC ¶ 45. A statement that the parties "intend" for a transaction to be valid when, according to Plaintiff, VFG knew the opposite was true, states a misrepresentation claim that is plausible on its face. Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently pled misrepresentation.

Second, VFG states that it cannot be held liable for fraud based upon a "misrepresentation of the law" – that is, the fact that the assignment of veterans' benefits is prohibited by 37 U.S.C. § 701 and 38 U.S.C. § 5301. (MTD at 11.) But, as Plaintiff points out, a statement that a transaction is lawful can be a statement of fact because it forms "a part of the data necessary to determine the consequences that the law attaches to another state of facts." Restatement (Second) of Torts § 545, cmt. 6 (1977). VFG's statements that the transactions were lawful and "risk free" allegedly gave investors the impression of a state of affairs that was not true. As such, VFG's "misrepresentation of law" argument fails.

Finally, the statement that the transactions would "help Veterans" is more than "non-actionable puffing." (MTD at 12.) The SAC alleges that veterans were induced to enter into unlawful contracts under false pretenses. SAC ¶¶ 30-31. Indeed, the statute prohibiting the assignment of veterans' benefits is "intended, not only to protect the recipient of the benefits, but to afford some degree of security to the dependents of such recipient, and to insure the public against the pauperism of recipient and his dependents." In re Flanagan, 31 F.Supp. 402, 403 (D.D.C. 1940). The Court finds that there are sufficient facts to support Plaintiff's misrepresentation claim based on the statement that the transactions would "help veterans."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

The Court therefore concludes that the SAC sufficiently alleges misrepresentation.

### 2. The SAC Sufficiently Alleges Reliance

#### a. Justifiable Reliance

Reasonableness of reliance on a misrepresentation is ordinarily a question of fact. Anschutz Corp. v. Merrill Lynch & Co. Inc., 785 F. Supp. 2d 799, 827 (N.D. Cal. 2011) (denying motion to dismiss securities action where plaintiff alleged that "given the complexity and novelty of the securities at issue, plaintiff had to rely on the ratings provided by defendants"). "Whether reliance was justified in a particular circumstance 'may only be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.'" Id. (citations omitted).

The SAC alleges that "Plaintiff and the Class Members justifiably relied on the aforementioned misleading provisions of the Executing Documents in believing that purchases of Securities were valid and lawful, and in deciding to purchase the Securities." SAC ¶¶ 42, 80. Defendants argue that Plaintiff's reliance was not justifiable because of VFG's "written, unambiguous and conspicuous disclosures[.]" (Opp. at 12-13.) As explained above, these "disclosures" plausibly state a misrepresentation claim. Because reasonable minds can differ as to whether Plaintiff's reliance on VFG's statements (e.g., that the investments were "risk free") was justified, Plaintiff has adequately alleged reliance.

#### b. Affiliated Ute Doctrine

Plaintiff then claims that two judicially recognized presumptions of reliance are applicable here: the Affiliated Ute doctrine and the "fraud on the market" theory. Both are "proxies" for pleading actual reliance and shift the burden of proving non-reliance to VFG.

First, the SAC states that the class is entitled to a presumption of reliance under Affiliated Ute v. United States, 406 U.S. 128 (1972). (SAC ¶ 65.) In Affiliated Ute, two bank employees who were actively involved in creating a market for the stock of a corporation created to manage interests in tribal assets failed to disclose their interest to the plaintiff. Id. at 153. The Supreme Court held, "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." Id. at 153-54.

VFG's motion to dismiss does not challenge Plaintiffs' Affiliated Ute argument; it is not until the Reply that VFG contends the doctrine does not apply because (1) Plaintiff alleges both misstatements and omissions, not "primarily" omissions and (2) the disclosures show actual non-reliance. (Reply at 9.) It is "plausible on its face" that the gravamen of the SAC is VFG's failure to disclose the illegality of the sale of veteran benefits to purchasers, which the Court finds is sufficient to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

assert a claim of reliance based on the Affiliated Ute presumption. Moreover, for the same reasons as set forth above, the disclosures in Plaintiff's contracts do not warrant dismissal of this claim at this stage.

### c. Fraud on the Market Theory

In the alternative, Plaintiff alleges that the class is entitled to a presumption of reliance under the fraud on the market theory. (SAC ¶ 66.) The fraud on the market theory is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." Basic Inc. v. Levinson, 485 U.S. 224, 241-42 (1988). Key to this theory, however, is the existence of an efficient and developed market for the relevant security.

Plaintiff fails to plead in the SAC that an efficient and developed market exists. In fact, the Declaration of Leonardo J. Bertucci, the insurance agent who sold Plaintiff the veterans' disability payments, states that Plaintiff made two purchases through VFG from two specific individuals. (SAC, Ex. C, Bertucci Decl. ¶ 8.) In March 2012, Plaintiff purchased disability payments from Jared Mitchell in the approximate amount of $130,000 and in April 2012, he purchased disability payments from Gay High in the approximate amount of $62,000. Id. However, the fraud on the market theory is based on the proposition that the market will interpret material misrepresentations or omissions, resulting in inflated prices. Based on the Court's understanding of the facts as pled, it does not appear Plaintiff can prevail on his fraud on the market theory as a matter of law in the absence of an efficient market for the two specific disability payments he purchased. Nevertheless, the Court **DISMISSES** this alternative theory **WITH LEAVE TO AMEND** to allow Plaintiff one last opportunity to allege a viable fraud on the market theory.

### 3. The SAC Adequately Pleads Causation and Economic Loss

To establish loss causation, Plaintiff must demonstrate "a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." In re Daou Sys., Inc., 411 F.3d 1006, 1025 (9th Cir. 2005). "[A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing factors will not bar recovery under the loss causation requirement but will play a role in determining recoverable damages." Id. (Internal quotation marks and citation omitted).

Defendants contends that the SAC "does not state, much less does it explain, what loss, if any, the plaintiff himself actually suffered." (MTD at 18.) Plaintiff responds that the SAC satisfies Federal Rule of Civil Procedure 8(a)'s notice pleading standard and that the loss is "in the amount of the purchase price." (Opp. at 17-18.) Interestingly, Plaintiff does not mention that the amounts of his two purchases of veteran's disability payments, approximately $130,000 and $62,000, are indicated in paragraph 8 of the Bertucci Declaration, which is attached as Exhibit C to the SAC. In any event, if, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

Plaintiff alleges, the transactions were unlawful, then the investment is worthless and Plaintiff has suffered loss in the amount he paid for it.

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** as to the fraud on the market theory. The remainder of the motion is **DENIED**.

### B. Individual Defendants' Motion to Dismiss

The Individual Defendants' Reply wisely drops the personal jurisdiction argument because as long as Individual Defendants have sufficient contacts with the United States, they are subject to personal jurisdiction in any federal district court under the Securities and Exchange Act. 15 U.S.C.A. § 78aa; Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1314 (9th Cir. 1985) ("Section 27 provides that any suit or action to enforce liability or duty created under the Act may be brought in the district where any act or transaction constituting the violation occurred, and process may be served in any district where the defendant is an inhabitant or wherever the defendant may be found.").

Instead, the Individual Defendants' Reply focuses on whether the SAC adequately alleges "control person" liability under Section 20(a) of the Exchange Act. 15 U.S.C.A. § 78t. Section 20(a) imposes joint and several liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter[.]" A *prima facie* case of control person liability requires: (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator. Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). To allege control person liability, plaintiffs "must plead . . . that defendants exercised 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations.'" In re McKesson HBOC Secs. Litig., 126 F.Supp.2d 1248, 1277 (N.D. Cal. 2000).

"The fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a 'controlling person.'" See SEC v. Todd, 642 F.3d 1207, 1223 (9th Cir. 2011). "Rather, indicia of 'control' include whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements, which is sufficient to 'presume control over the transactions giving rise to the alleged securities violation.'" Id. (citations omitted). "Moreover, actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control. Id.

Plaintiff alleges, upon information and belief, that the Individual Defendants "had the power to control and influence VFG" and "exercised a significant degree of day-to-day operational control over VFG, including but not limited to VFG's financial operations." SAC ¶¶ 93-97 (making the same allegations as to each Individual Defendant). Plaintiff adds that Andrew Gamber is managing member of VFG from February 2012 to present, owns 100% of VFG, and maintained an ownership interest of at least 32% at all times. Id. ¶ 93. He further alleges, upon information and belief, that Jonathan Sheets was managing member from September 19, 2001 until February 2012. Id. ¶ 94. In February 2011, Sheets allegedly "drafted a memo for circulation to the Selling Agents" that "purported to explain that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-671 ABC (RZx) | Date | September 17, 2013 |
|---|---|---|---|
| Title | Lawrence Vicari v. Voyager Financial Group, LLC, et al. | | |

the Securities did not violate federal law, because the transaction was an assignment of cash flow rather than a Pension or Veterans Benefit." Id. ¶ 44.

The basis for the SAC's allegations that the Individual Defendants "acted as controlling persons of VFG" are:

- By virtue of their high-level positions, they had the power to influence and control the decision-making of VFG, including the content and dissemination of the various statements that Plaintiff contends are false and misleading (SAC ¶ 100);
- Had unlimited access to copies of the company's reports, press releases, public filings and other statements made in connection with the sale of the Securities (id. ¶ 101); and
- Were "privy to confidential and proprietary information concerning VFG, its operations, finances, financial condition and present and future business prospects" (id. ¶ 102).

The Court finds that Plaintiff has pled enough as to Sheets, who allegedly drafted a key memo used by selling agents, but not as to the other individual defendants. Plaintiff's conclusory pleadings of the elements of control person liability are insufficient because they fail to identify how the other individual defendants controlled VFG. Although this may be a simple pleading matter as to Gamber, it appears that Kogut, McClinton, and Young were too low-ranking to be control persons. Kogut is not an owner of the company. (Kogut Decl. ¶ 2.) As to McClinton and Young, it appears they are not owners of the company and never served as officers or directors of VFG. (McClinton Decl. ¶ 4; Young Decl. ¶ 5.) Absent allegations regarding each individual defendant's respective role within VFG and how those roles gave them control over VFG, Plaintiff has failed to state a claim for control person liability. As such, the control person claims as to Gamber, Kogut, McClinton, and Young are **DISMISSED WITH LEAVE TO AMEND**.

### III. CONCLUSION

Accordingly, VFG's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to the fraud on the market theory and **DENIED** as to the remainder of the motion. The Individual Defendants' motion to dismiss is likewise **GRANTED IN PART AND DENIED IN PART**. Plaintiff's control person claims as to Gamber, Kogut, McClinton, and Young are **DISMISSED WITH LEAVE TO AMEND**. Plaintiff shall file a Third Amended Complaint **no later than ten (10) days after the date of this Order.**

The Court **RESETS** the Scheduling Conference for **December 2, 2013 at 10:00 a.m.**

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | AB |